UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 14-21112-GAYLES/TURNOFF

ROBERT DEANGELIS,

    Plaintiff,

vs.

CIRCLE K STORES, INC.,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    This cause came before the Court on the Motion of Defendant Circle K Stores, Inc. ("Circle K") for Summary Judgment and Memorandum of Law in Support (the "Motion") [ECF No. 58]. The Court has reviewed the Motion, the record, and is otherwise fully advised. For the reasons stated below, the Court GRANTS the Motion as to Counts II, IV, V, VI, VII, VIII, X, and XII of Plaintiff's First Amended Complaint (the "Complaint") [ECF No. 42] and DENIES the Motion as to Counts I, III, IX, and XI of the Complaint.

**BACKGROUND**

**I. Employment with Circle K**

    In 1995, Plaintiff Robert DeAngelis ("Plaintiff") began his career with Circle K as a Market Manager. Plaintiff supervised stores in the Florida Keys market until his transfer to the Miami-Dade/Broward market in mid-April of 2011. Prior to 2011, Circle K had never formally disciplined Plaintiff for his performance.

On January 17, 2011, Circle K Regional Operation Director Brian Allen ("Allen") placed Plaintiff on a 60-day performance plan. Under the plan, Plaintiff was to improve his performance in areas such as training, operating stores within approved hour requirements, and using proper inventory controls. When the plan expired, neither Allen nor anyone else at Circle K followed up with Plaintiff regarding his performance

In August, 2011, after a corporate reorganization, Circle K offered Plaintiff the opportunity to retire with a severance package or transfer back to the Florida Keys market.[1] Plaintiff agreed to transfer back to the Florida Keys under the supervision of Regional Operations Director Robert McNab ("McNab"). Plaintiff also agreed to accept a Performance Evaluation Memorandum from McNab which set forth Circle K's expectations for his performance.

## II. Medical Issues and Leave

On October 27, 2011, Plaintiff's physician, Dr. Armando Segui ("Dr. Segui"), provided Circle K with a certification that Plaintiff's disability from sciatic nerve issues began on July 6, 2011. Dr. Sequi noted that Plaintiff might be able to peform many of his duties at work if he used a cane. In his deposition, Plaintiff testified that Christie O'Halloran ("O'Halloran"), Circle K's Human Resources Manager, told him he could not use a cane while working. In addition, McNab testified that O'Halloran told him that Plaintiff could not use a walker while working in a store.

---

[1] The record reflects that the stores in the Florida Keys market had problems with consistent operation and performance. *See* Allen Dep. P. 88, lns. 24-25; p. 89, lns. 1-13 ("the stores in the Keys, operating those consistently, day in and day out, was a challenge and always has been."); Declaration of Othon Cardelle, ¶¶ 5-9 ("[T]he Florida Keys area stores were not performing well at all and needed improvement.").

2

Plaintiff's sciatic nerve problem required surgery. Because Plaintiff believe his allotted FMLA leave time (twelve weeks) would not be enough time for surgery and recovery time, on September 30, 2011, Plaintiff utilized his paid vacation time. Plaintiff did not advise Circle K that he needed surgery when he went on vacation. Plaintiff then requested leave from October 26, 2011, through December 31, 2011. Circle K's records reflect that Plaintiff's unpaid medical leave began on October 25, 2011. Following his surgery, Plaintiff was unable to return to work by December 31, 2011. As a result, Circle K granted him additional, unpaid, non-FMLA leave until March 20, 2012.[2] Circle K did not notify Plaintiff that the rights associated with FMLA leave did not attach to the additional, unpaid, non-FLMA leave.

### III. Termination

On March 19, 2012, Circle K terminated Plaintiff effective March 20, 2012. Plaintiff was seventy-four ("74") years old. Circle K replaced Plaintiff in the Florida Keys market manager position with Bobby Johnson ("Johnson"), who was thirty-nine ("39") years old.

### IV. Litigation

On August 26, 2014, the Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue to Plaintiff. Plaintiff filed his First Amended Complaint on October 15, 2014, asserting claims under the Family Medical Leave Act ("FMLA"), the Florida Civil Rights Act ("FCRA"), the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). Counts I and II allege violations of the ADEA for Plaintiff's termination and forced impairment leave; Counts III and IV allege violations of the ADA also for Plaintiff's termination and forced impairment leave. Counts V, VI, and VII allege that Circle K

---

[2] If computed from September 30, 2011, Plaintiff was out on leave for approximately 24 weeks. If computed from October 26, 2011, Plaintiff was out on leave for approximately 20 weeks.

interfered with, restrained, or denied Plaintiff's exercise of his FMLA rights when it terminated him and discouraged him from taking leave. Count VIII alleges that Circle K retaliated against Plaintiff for his exercise or attempted exercise of his FMLA rights. Counts IX, X, XI, and XII allege violations of the FCRA for age and disability discrimination. On February 16, 2015, Circle K moved for summary judgment.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  "[T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clarks, Inc.*, 929 F.3d 604, 608 (11th Cir. 1991).  Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.  Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

4

S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

## **DISCUSSION**

I.  **Forced Impairment Leave and Discouragement**

Plaintiff claims Circle K discriminated against him based on his age and disability by forcing him to take mandatory leave in violation of the ADEA, the ADA, and the FCRA. *See* Counts II, IV, X, and XII. Plaintiff also asserts that Circle K discouraged him from taking leave in violation of the FMLA. *See* Count VI. The Court finds that these claims fail as a matter of law.

Plaintiff cannot show that he was forced or discouraged from taking leave because, in his deposition, he admitted that no one at Circle K forced him or discouraged him from taking leave.

> Q: So it wasn't Circle K making you take [leave], it was your health condition that made you take [leave], correct?
> A: Yeah
>
> . . .
>
> Q: The question, sir, is, did anybody at Circle K discourage you from taking FMLA leave?
> A: No.

[Pl. Dep., p. 160, lns. 18-25; p. 167, lns. 23-24; p. 168, lns. 1-4]. Thus, based on Plaintiff's own testimony, these claims fail. *See Leoncio v. Louisville Ladder, Inc.*, 601 F. App'x 932 (11th Cir. 2015) (affirming partial summary judgment where the plaintiff's earlier deposition testimony clearly and unambiguously contradicted his affidavit, which was not filed until defendant moved for summary judgment); *see also Collins v. Miami-Dade Cnty.*, 361 F. Supp. 2d 1362, 1371 (S.D. Fla. 2005) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter

5

create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.") (quoting *Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir.1984)).

## II.   FMLA Claims

The FMLA provides employees with the right to "12 work weeks of leave during any 12-month period. . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C § 2612(a)(1), and the right following leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position.  29 U.S.C. § 2614 (a). Plaintiff claims Circle K interfered with his rights under the FMLA when it terminated him (Counts V and VII) and that it retaliated against him for taking FMLA leave (Count VIII).

There is no dispute that Plaintiff was entitled to FMLA leave.  However, Plaintiff admitted that he was never denied benefits under the FMLA. [Pl. Dep., p. 166, lns. 18-22].  It is also undisputed that Plaintiff's paid vacation leave, unpaid FMLA leave, and unpaid non-FLMA leave, in total, exceeded his 12-week FMLA leave entitlement, regardless of whether it began on September 30, 2011, or October 26, 2011.  In addition, Circle K's failure to inform Plaintiff that the unpaid non-FMLA leave was any different than his FMLA leave is not a violation of the law. *See Dixon v. Pub. Health Trust of Dade Cnty.*, 567 F. App'x 822, 825-26 (11th Cir. 2014) (noting that the FMLA "grants employers the right to require employees 'to substitute any of the accrued paid vacation leave . . . for leave provided under [the FMLA]'"); *McGregor v. Autozone*, 180 F.3d 1305, 1308 (11th Cir. 1999) (holding that the text of the FMLA did not suggest that 12 weeks could be extended and that when an employer provides more than 12 weeks of leave the employer should not be liable for interfering with FMLA rights). Accordingly, Plaintiff's claims

6

fail as a matter of law. *See also Dixon*, 567 F. App'x at 826 (holding that if the defendant terminated the plaintiff after she received 12 weeks of leave —whether paid, unpaid, vacation or medical — none of her FMLA claims are viable).

Plaintiff's retaliation claim fails for the same reasons. Circle K discharged Plaintiff after his 12 weeks of leave expired. Therefore, Plaintiff's claim for retaliation fails as a matter of law because the FMLA no longer protected him when he was discharged. *See Id.*; *McGregor*, 180 F.3d at 1308 ("Where an employer such as defendant exceeds the baseline 12 weeks by providing not only more leave than the FMLA but also paid leave, the employer should not find itself sued for violation the FMLA.") *See also Breneisen v. Motorola,* 656 F.3d 701, 705 (7th Cir. 2011)("Since the retaliatory conduct which Breneisen alleges occurred happened when he was no longer subject to the FMLA's clearly defined protections, he is not entitled to recovery for an FMLA violation."); *LaPorte v. Buena Veritas North America, Inc.*, No. 12C9543, 2015 WL 425825 (N.D.Ill., Jan. 30, 2015)("[E]mployee who could not work after exhausting his twelve weeks of FMLA leave could not claim retaliation."). Therefore, Counts V, VII, and VIII, all based on the FMLA, fail as a matter of law.

## III. Age Discrimination

In Counts I and IX, Plaintiff alleges that Circle K terminated him because of his age in violation of the ADEA and FCRA.[3] The ADEA makes it unlawful for an employer to discriminate against an employee who is at least forty years of age on the basis of his age. 29 U.S.C. §§ 623(a)(1) & 631 (a). "To prevail on an age-discrimination claim against an employer, the plaintiff must prove by a preponderance of the evidence that his age was the 'but for' cause

---

[3] "Federal case law interpreting . . . the ADEA applies to cases arising under the FCRA." *Ashkenazi v. South Broward Hosp. Dist.*, No. 13-15061, 2015 WL 1839508 (11th Cir., Apr. 23, 2015)(quoting *City of Hollywood v. Hogan,* 986 So.2d 634, 641 (Fla. 4th DCA 2008))

of the challenged employment decision." *Loberger v. Del-Jen, Inc.*, No. 14-13158, 2015 WL 3895428 at *3 (11th Cir. June 25, 2015).

Plaintiff supports his age discrimination claims with circumstantial evidence. The Court, therefore, must apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff bears the initial burden of establishing a *prima facie case* of discrimination. *Id.* To establish a *prima facie* case of age discrimination, Plaintiff must show that he: (1) was a member of a protected group; (2) was subject an adverse employment action; (3) was qualified for the position; and (4) was replaced by a younger person. *See Loberger*, 2015 WL 3895428 at *4. If Plaintiff can establish his *prima facie case,* the burden shifts to Circle K to "articulate a legitimate, non-discriminatory reason for the challenged employment action." *Id.* (quoting *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1270 (11th Cir. 2014).

If Circle K proffers a legitimate reason for its actions, the burden shifts back to the Plaintiff to show that Circle K's reasons are pretextual. *Id.* To do so, Plaintiff must "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct. . . and demonstrate[] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citations omitted).

It is undisputed that: (1) Plaintiff was 74 years old and therefore a member of a protected group; (2) Circle K terminated him; (3) he was qualified for his position;[4] and 4) Circle K replaced him with Johnson - a substantially younger individual. Plaintiff, therefore, has

---

[4] Qualification can be inferred from a long tenure at a certain position. *Damon v. Fleming Supermarkets of Florida*, 196 F.3d 1354, 1360 (11th Cir. 1999).

8

established a *prima facie* case of age discrimination. Circle K – citing to Plaintiff's performance plans – argues that it discharged Plaintiff because of his poor performance and not his age. In response, Plaintiff asserts that: (1) during the 60-day performance improvement plan he improved his performance and was neither demoted nor terminated; (2) Circle K's decision to transfer him to the problematic Florida Keys market contradicts the poor performance allegation; (3) McNab did not have knowledge of Plaintiff's performance prior to presenting him with an offer to transfer to the Florida Keys or accept a severance package; (4) Circle K did not terminate younger market managers for similar performance issues, (5) Circle K did not place Johnson under a performance plan or terminate him despite his performance issues and low evaluation scores; and (6) McNab expressed a desire to get rid of older employees. Based on the record, the Court finds that there is a genuine issue of material fact as to pretext. Accordingly, summary judgment is denied as to Counts I and IX.

## IV. Disability Discrimination

In Counts III and XI of the Complaint, Plaintiff alleges that Circle K terminated him because of his disability in violation of the ADA and FCRA. The ADA makes it unlawful for an employer to discriminate against "qualified individual[s] on the basis of disability." 42 U.S.C. §12112(a). To establish a *prima facie* case of disability discrimination, a plaintiff must show that: (1) he has a disability; (2) he was qualified at the relevant time; and (3) the employer discriminated against him because of his disability. *Cazeau v. Wells Fargo Bank, N.A.*, No. 14-14863, 2015 WL 3605744 (11th Cir. June 10, 2015).

The ADA defines disability as: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102. Dr. Segui

9

certified that Plaintiff had a medical problem. In addition, O'Halloran had knowledge of Plaintiff's medical issues. Although Circle K disputes Plaintiff's actual or perceived disability, the Court finds that there is a disputed issue of material fact regarding whether Plaintiff was disabled. It is undisputed that Plaintiff was qualified for his position. There is, however, a disputed issue of material fact as to whether Circle K (a) failed to provide reasonable accommodations by permitting Plaintiff to use a cane while working and (b) terminated Plaintiff because of his disability or because of his poor work performance. These disputed issues of fact are for a jury to decide. Therefore the Court denies summary judgment as to Counts III and XI.

## V.     EEOC Conciliation Efforts

Finally, Circle K argues that Plaintiff's claims are premature and must be dismissed for failure to exhaust administrative remedies because the EEOC failed to conciliate in good faith. Circle K's argument is without merit.

When the EEOC is bringing a claim against an employer for discrimination under Title VII, the EEOC has a statutory obligation to attempt conciliation. *See* 42 U.S.C. §2000e-5(f)(1). *See also Mach Mining, LLC v. Equal Employment Opportunity Commission*, 135 S.Ct. 1645, 1649 (2015). However, the conciliation requirement only applies when the EEOC is bringing an action against an employer, not when a private litigant is suing his or her employer. *See Danner v. Phillips Petroleum, Co.*, 447 F.2d 159, 161 (5th Cir. 1971)(in action by employee against employer, the Court held "[i]t is now too well settled to discuss that no EEOC effort to conciliate is required before a federal court may entertain a Title VII action"). Accordingly, the Court need not ascertain whether the EEOC made an attempt to conciliate in good faith because it is not relevant to Plaintiff's action.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion [ECF No. 58] is **GRANTED** as to Counts II, IV, V, VI, VII, VIII, X, and XII of the Complaint; and **DENIED** as to Counts I, III, IX, and XI of the Complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida this 17th day of July, 2015.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE